```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
```

PATRICIA COCCA-RAU,

                      Plaintiff,

v.     **OPINION AND ORDER**

STANDARD INSURANCE COMPANY and     19-cv-06149 (PMH)
STANDARD INSURANCE OF NEW YORK,

                      Defendants.
```
-----------------------------------------------------------X
```

PHILIP M. HALPERN, United States District Judge:

     Plaintiff Patricia Cocca-Rau brings employment discrimination claims against Defendants Standard Insurance Company and Standard Insurance of New York ("Defendant").[1] Plaintiff brings four claims for relief: (1) religious discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; (2) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; (3) race discrimination in violation of 42 U.S.C. § 1981; and (4) unspecified supplemental claims under New York State Human Rights Law.

     By motion dated January 31, 2020, Defendant moves to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 15).

     For the reasons set forth below, Defendant's motion to dismiss is GRANTED.

---

[1] Plaintiff's Complaint names two Defendants: Standard Insurance Company and Standard Insurance of New York. According to Defendants, Standard Insurance Company and Standard Insurance of New York are not two separate entities and the correct name of the entity is "Standard Life Insurance Company of New York." (*See* Doc. 16 at 1 n.1). Plaintiff consents to amending her Complaint if, in fact, Standard Life Insurance Company of New York is the proper entity. (*See* Doc. 18 at 1 n.1). Accordingly, the Court construes Plaintiff's Complaint, and deems it hereby amended, to bring claims against an additional named Defendant: Standard Life Insurance Company of New York. The Court refers to the Defendants throughout as "Defendant."

**BACKGROUND**

On July 1, 2019, Plaintiff commenced this action. The facts, as recited below, are taken from Plaintiff's Complaint. (Doc. 1, "Compl."). Plaintiff is a 57-year-old Caucasian, Catholic, woman. *Id.* ¶¶ 18–20. Plaintiff was employed by Defendant, an insurance company, for sixteen years before being terminated. *Id.* ¶¶ 16–17. Plaintiff's duties included investigating potentially fraudulent insurance claims. *Id.* ¶ 9. Plaintiff was also in charge of training other members on her team regarding Defendant's "complex requirements for processing claims based on [Defendant's] insurance claim processing principles." *Id.* ¶¶ 23–24. Plaintiff states that she had a good employment record during her period of employment and that she received "great performance evaluations and awards." *Id.* ¶ 21.

If Plaintiff or "her mentees" (apparently a reference to some of Defendant's employees whom Plaintiff supervised) suspected fraud in the course of processing claims, they would refer the matter to the Special Investigation Unit ("SIU"). *Id.* ¶ 27. Plaintiff alleges that she was informed by an SIU employee that one of the brokers who worked with Defendant was under review and that the underwriting department was advised not to accept any new clients from this broker. *Id.* ¶ 29. When Plaintiff began receiving claims from that broker for new clients, Plaintiff was told by an SIU employee that the claims would be subjected to additional requirements as dictated by SIU. *Id.* ¶¶ 30–31. Plaintiff relayed this information to her mentees and informed them that they would have to comply with the additional requirements even though the requirements were time consuming. *Id.* ¶¶ 32–33. The broker, who represented clients that allegedly had a history of reporting inaccurate claims, represented members of the Hasidic Jewish community *Id.* ¶¶ 35–44.

Plaintiff alleges that she was mistreated by her supervisor, Jenifer Tucci, a woman in her 40s, who favored younger employees. *Id.* ¶¶ 45–46. Plaintiff alleges that she "complained about the unfair treatment, which included being singled out for adverse treatment by the supervisor, and the supervisor's demeaning comments and a condescending attitude toward Plaintiff." *Id.* ¶ 47. On September 6, 2018, Plaintiff was told by Jeff Sammons, director of short-term disability, "that she was being terminated because it was reported that she 'was saying bad things about Jews.'" *Id.* ¶ 50. Mr. Sammons told Plaintiff that prior to deciding to terminate Plaintiff, Defendant had conducted an investigation into Plaintiff's statements. *Id.* ¶ 51.

Plaintiff believes that the justification for her termination was "pretextual and a sham." *Id.* ¶ 62. Plaintiff avers that "the unfounded accusations against [her] are the result of religiously-motivated bias by Defendant." *Id.* ¶ 52. Plaintiff believes that "the fact that [she] was making any comment that a Jewish broker or members of a Hasidic school or community may have committed or condoned insurance fraud, or any comment that certain suspicious conduct by such broker or members of a religious school or community should be scrutinized in any way, to safeguard against insurance fraud, were construed by Defendant as being 'anti-Semitic.'" *Id.* ¶ 53. Plaintiff states that she "was fired, in her view, because she is a non-Jew who acted appropriately regarding possible insurance fraud perpetrated by an ultra-Orthodox (Hasidic) person, and as a matter of 'political correctness,' [Defendant] feared an accusation that it was being labeled 'anti-Semitic' by its examining possible fraud by one or more Jewish claimants." *Id.* ¶ 11. Plaintiff does not claim that she was discriminated against because she is Catholic or Caucasian.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion enables a court to consider dismissing a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-pleaded factual allegations [in the complaint], a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-plead factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). However, the presumption of truth does not extend to "legal conclusions, and threadbare recitals of the elements of the cause of action." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. 662). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

## ANALYSIS

This Court's review begins with an analysis of Plaintiff's four claims for relief: (1) religious discrimination in violation of Title VII of the Civil Rights Act of 1964; (2) age discrimination in violation of the ADEA; (3) race discrimination in violation of 42 U.S.C. § 1981; and (4) unspecified supplemental claims under New York State Human Rights Law.[2] For the

---

[2] While not enumerated as a separate claim for relief, Plaintiff's Complaint also appears to raise a breach of contract claim for a breach of the implied covenant of good faith and fair dealing. *See* Compl. ¶¶ 58–59. However, Plaintiff states in her brief that she "is pursuing only claims for unlawful discrimination, not breach of contract." (Doc. 18, "Pl. Opp'n" at 1 n.2). Accordingly, the Court construes Plaintiff's Complaint as raising no such claim for relief.

reasons set forth below, Defendant's motion to dismiss is granted and Plaintiff's claims are dismissed.

I. Religious Discrimination Claim

Title VII of the Civil Rights Act of 1964 "makes it unlawful for an employer 'to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (quoting 42 U.S.C. § 2000e–2(a)(1)). What exactly a plaintiff must allege at the pleading juncture for her Title VII case to survive a motion to dismiss has evolved, and it is appropriate for the Court to pinpoint the applicable pleading standards for a Title VII claim in the Second Circuit before turning to the merits of Plaintiff's claim.

The Supreme Court, in a 1973 landmark decision, adopted a three-stage, burden-shifting framework for analyzing employment discrimination claims under Title VII. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). At the first stage, a plaintiff has the initial burden of establishing a *prima facie* case of discrimination. *Id.* at 802. A plaintiff can make such a showing by demonstrating that: "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citing *McDonnell Douglas,* 411 U.S. at 802). Second, once a plaintiff presents a *prima facie* case of employment discrimination, the burden of production shifts "to the employer to articulate some legitimate, nondiscriminatory reason for the employees'" adverse employment action. *See McDonnell Douglas*, 411 U.S. at 802; *Weinstock*, 224 F.3d at 42 ("[T]he defendant may rebut [the plaintiff's *prima facie*] showing by articulating a legitimate, non-discriminatory reason for the

employment action." (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254 (1981))). Third, if the defendant can articulate a legitimate, non-discriminatory reason why the plaintiff suffered an adverse employment action, the burden of production shifts back to the plaintiff "to show that [defendant's] stated reason for [plaintiff's adverse employment action] was in fact pretext." *McDonnell Douglas*, 411 U.S. at 804; *Weinstock*, 224 F.3d at 4 ("[T]he plaintiff must then come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination.").

After *McDonnell Douglas*, for a plaintiff's Title VII claim to survive a motion to dismiss, a plaintiff's complaint had to allege facts constituting a *prima facie* case of discrimination. That pleading test was reviewed by the Supreme Court in 2002. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002). The Supreme Court, in *Swierkiewicz*, held that at the motion to dismiss stage "under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a *prima facie* [Title VII] case." *Id*. The Court rejected a heightened pleading standard and found that the initial phase of the *McDonnell Douglas* test set forth "an evidentiary standard, not a pleading requirement." *Id.* at 510. The Court observed:

> Under the . . . heightened pleading standard, a plaintiff without direct evidence of discrimination at the time of his complaint must plead a *prima facie* case of discrimination, even though discovery might uncover such direct evidence. It thus seems incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered.

*Id.* at 511–12.

The Court further held that this heightened pleading standard was in conflict with Fed. R. Civ. P. 8 which requires only that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 512 (quoting Fed. R. Civ. P. 8(a)(2)). When *Swierkiewicz* was decided in 2002, *Conley v. Gibson* was good law and provided the motion to

dismiss standard of review for evaluating the sufficiency of claims in a complaint pursuant to Fed. R. Civ. P. 8 and 12. Under *Conley*'s liberal pleading standards, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45–46 (1957), *abrogated by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Apparently relying on *Conley*, the *Swierkiewicz* Court held that a plaintiff's Title VII allegations "must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz*, 534 U.S. at 512 (quoting *Conley*, 355 U.S. at 47). Therefore, the Court found that "conclusory allegations of discrimination" were enough for a Title VII claimant to survive a motion to dismiss. *Id.* at 514–15 (finding that because plaintiff "alleged that he had been terminated on account of his national origin in violation of Title VII and on account of his age in violation of the ADEA" his claims could survive a motion to dismiss).

Subsequently, *Conley*'s minimal pleading standard was reformed when the Court adopted a heightened plausibility pleading standard in *Iqbal. See Iqbal,* 556 U.S. at 669–70. Given that *Swierkiewicz* had relied on *Conley* to hold that a heightened pleading standard in Title VII cases was improper and in conflict with Rule 8, the continued clarity and use of *Swierkiewicz*'s holding has become uncertain. The Second Circuit, in a pair of 2015 decisions, grappled with how to square *Iqbal*'s heightened plausibility pleading standards with the minimal Title VII pleading standard adopted by the Court in *Swierkiewicz*.

The first occasion on which the Second Circuit addressed "whether *Iqbal*'s requirement applies to Title VII complaints falling under the *McDonnell Douglas* framework" was in *Littlejohn v. City of New York*. *See* 795 F.3d 297, 309 (2d Cir. 2015). The Court found that *Swierkiewicz*'s

minimal pleading standard should be refined in light of *Iqbal*'s plausibility pleading standard. The Court held:

> [A]t the initial stage of the litigation—prior to the employer's coming forward with the claimed reason for its action—the plaintiff does not need substantial evidence of discriminatory intent. If she makes a showing (1) that she is a member of a protected class, (2) that she was qualified for the position she sought, (3) that she suffered an adverse employment action, and (4) can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation . . . .

*Id.* at 311. Therefore, in considering *Swierkiewicz*'s minimal pleading standard and *Iqbal*'s plausibility pleading standard, the Second Circuit kept in place the first three factors of the *McDonnell Douglas* evidentiary standard. However, as to the fourth *McDonnell Douglas* factor, the Court modified a plaintiff's pleading burden. Whereas stage one of the *McDonnell Douglas* evidentiary standard requires a plaintiff to present evidence showing "some minimal evidence suggesting an inference that the employer acted with discriminatory motivation," the Second Circuit in *Littlejohn* stated that, at the pleading stage and to survive a motion to dismiss, the facts included in a plaintiff's complaint must make it plausible that "the plaintiff . . . has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Id.* Stated another way, *Littlejohn* held that "[t]he facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation." *Id.*

The Court found that an inference of discrimination could arise in, at least, five circumstances including:

> [1] the employer's criticism of the plaintiff's performance in ethnically degrading terms; [2] or its invidious comments about others in the employee's protected group; [3] or the more favorable treatment of employees not in the protected group; [4]or the sequence of events leading to the plaintiff's discharge . . . [5 or] when an

8

> employer replaces a terminated or demoted employee with an individual outside the employee's protected class.

*Id.* at 312–13 (internal citations and quotations omitted).

One month later in *Vega v. Hempstead Union Free Sch. Dist.*, a separate panel in the Second Circuit again addressed a Title VII plaintiff's pleading requirement at the motion to dismiss stage in light of *Iqbal*'s plausibility pleading standard. *See* 801 F.3d 72, 85–87 (2d Cir. 2015). In *Vega*, rather than apply the *Littlejohn* version of the four *McDonnell Douglas* factors at the motion to dismiss stage, the Court held that "under *Iqbal* and *Twombly* . . . in an employment discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Id.* at 86. The Court therefore restated the *McDonnell Douglas* four-factor and *Swierkiewicz* tests at the pleading juncture in light of *Iqbal.*

As to whether a plaintiff's allegations are plausible, the court relied on the familiar fundamental plausibility principles: "[A] plaintiff must plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,'" *id.* (quoting *Iqbal*, 556 U.S. at 678); "While 'detailed factual allegations' are not required, 'a formulaic recitation of the elements of a cause of action will not do,'" *id.* (quoting *Twombly*, 550 U.S. at 555); "[T]he court must assume the factual allegations in the complaint to be true, even if [they] are] doubtful in fact, and a complaint may not be dismissed based on a judge's disbelief of a complaint's factual allegations," *id.* (internal citations and quotations omitted). Plausibility then is not probability, but rather requires only that the allegations give rise to an inference of discriminatory motivation that "nudge [the plaintiff's] claims across the line from conceivable to plausible." *Id.* (quoting *Twombly*, 550 U.S. at 570).

The *Vega* panel acknowledged that the minimal pleading requirement may be met by evidence of direct discrimination. *Id.* For example, an employer's policy that requires female employees to contribute more money to a pension fund than male employees is evidence of direct discrimination. *See City of Los Angeles, Dep't of Water & Power v. Manhart*, 435 U.S. 702, 711 (1978). The panel also acknowledged that a plaintiff could satisfy her minimal pleading burden by alleging facts that create a "'mosaic' of intentional discrimination by identifying 'bits and pieces of evidence' that together give rise to an inference of discrimination." *Vega*, 801 F. 3d 87 (quoting *Gallagher v. Delayney*, 139 F.3d 338, 342 (2d Cir.1998), *abrogated in part on other grounds by Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742 (1998)). The court was cognizant that the discrimination a Title VII claimant faces may be elusive "because discrimination claims implicate an employer's usually unstated intent and state of mind, [and] rarely is there direct, smoking gun, evidence of discrimination." *Id.* (internal quotations and citations omitted). The *Vega* panel urged the district court to "draw on its judicial experience and common sense" to identify discriminatory motivation as "clever men may easily conceal their motivations." *Id.* (quoting *Robinson v. 12 Lofts Realty, Inc.,* 610 F.2d 1032, 1043 (2d Cir.1979)).

The Second Circuit emphasized the minimal burden on a plaintiff at the motion to dismiss stage to allege facts demonstrating discrimination and concluded:

> At the pleadings stage, then, a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination.

*Id.* at 87 (citing *Littlejohn*, 795 F. 3d at 310).

Since *Littlejohn* and *Vega* were decided, the Second Circuit has reviewed the sufficiency of a Title VII claim by following *Littlejohn* in some cases[3] and by following *Vega* in others.[4] Even assuming it were necessary, this Court need not reconcile *Littlejohn* and *Vega* and their holdings on the proper framework for analyzing whether a Title VII claimant has alleged enough facts to survive a motion to dismiss. The allegations related to Plaintiff's Title VII claim here, analyzed under the pleading standard in both cases, is insufficient and must be dismissed.

Turning to the merits of Plaintiff's claim, Plaintiff's Title VII claim alleges religious discrimination. Compl. ¶¶ 60–67. Plaintiff is a Catholic. *Id.* ¶ 19. Plaintiff has plausibly alleged that she suffered an adverse employment action because she alleges that she was terminated. *Id.* ¶ 8; *see also Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (finding "termination of employment" is an example of a "materially adverse" employment action). Plaintiff also alleges that she is a member of a protected class, Catholic, *see* Compl. ¶ 19, and that she was qualified for the position she held, *see id.* ¶ 21.

The question this Court must address, then, is whether Plaintiff "can sustain a minimal burden of showing facts suggesting an inference of discriminatory motivation" or whether Plaintiff has "plausibly allege[d] that . . . [her] race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Littlejohn*, 795 F. 3d at 311; *Vega*, 801 F.3d 86. Plaintiff's allegations fail under either standard. The allegations in Plaintiff's Complaint do not give rise to a

---

[3] *See, e.g., Menaker v. Hofstra University*, 935 F.3d 20, 30 (2d Cir. 2019); *LeGrand v. Walmart Stores E., LP*, 779 F. App'x 779, 782 (2d Cir. 2019); *Palmer v. Fannie Mae*, 755 F. App'x 43, 45 (2d Cir. 2018); *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018); *Johnson v. Andy Frain Servs., Inc.*, 638 F. App'x 68, 70 (2d Cir. 2016); *Baez v. New York*, 629 F. App'x 116, 118 (2d Cir. 2015).

[4] *See, e.g., Ninying v. New York City Fire Dep't*, 807 F. App'x 112, 114 (2d Cir. 2020); *Rivera v. JP Morgan Chase*, No. 18-CV-3308, 2020 WL 2787622, at *1 (2d Cir. May 29, 2020); *Kairam v. W. Side GI, LLC*, 793 F. App'x 23, 27 (2d Cir. 2019); *LeGrand v. Walmart Stores E., LP*, 779 F. App'x 779, 782 (2d Cir. 2019); *Khanna v. MUFG Union Bank, N.A.*, 785 F. App'x. 15, 15 (2d. Cir. 2019); *Rowe v. New York State Dep't of Taxation & Fin.*, 786 F. App'x 302, 304 (2d Cir. 2019); *Shaw v. McDonald*, 715 F. App'x 60, 61 (2d Cir. 2018); *Shultz v. Congregation Shearith Israel of City of New York*, 867 F.3d 298, 304 (2d Cir. 2017); *Frederick v. United Bhd. of Carpenters*, 665 F. App'x 31, 33 (2d Cir. 2016); *Lekettey v. City of New York*, 637 F. App'x 659, 661 (2d Cir. 2016).

plausible inference of discrimination based on Plaintiff's Catholic religion. In fact, Plaintiff does not include a single allegation from which the Court can infer that she faced any discrimination based on her religion.

Rather, Plaintiff advances the theory that she faced discrimination "on account of her being non-Jewish" which, according to Plaintiff, is actionable "reverse discrimination." Pl. Opp'n at 6. While Plaintiff is correct that Title VII forbids "reverse discrimination," *see McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 279 (1976), a plaintiff still must allege that they faced discrimination *because of* their religion. See 42 U.S.C.A. § 2000e-2(a)(1) ("It shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual . . . *because of* such individuals . . . religion" (emphasis added)). A reverse discrimination claim cannot lie if the plaintiff does not allege that they faced discrimination because of a protected characteristic. Plaintiff could, of course, allege that she faced discrimination based on her Catholic religion. However, Plaintiff makes no such allegation here and the Court therefore cannot plausibly infer that her religion was a motivating factor in her termination. The Court has searched and not found any support for the proposition that a claim of religious discrimination can exist for a "non-Jewish" person.

Additionally, and separately dispositive of Plaintiff's Title VII claim, the majority of Plaintiff's allegations are based upon Plaintiff's beliefs. *See, e.g.*, Compl. ¶ 11 ("Plaintiff was fired, *in her view*, because she is a non-Jew who acted appropriately regarding possible insurance fraud potentially perpetrated by an ultra-Orthodox (Hasidic) person, and as a matter of 'political correctness,' the Standard feared an accusation that it was being labeled 'anti-Semitic' by its examining possible fraud by one or more Jewish claimants." (emphasis added)); *id.* ¶ 13 ("*Upon information and belief*, if Plaintiff had been Hasidic herself, and pointed out the same evidence of

potential fraud, she would not have been fired, or even criticized." (emphasis added)); *id.* ¶ 52 ("*Upon information and belief*, the unfounded accusations against Plaintiff are the result of religiously-motivated bias by Defendant." (emphasis added)); *id.* ¶ 53 ("*Upon information and belief*, the fact that Plaintiff was making any comment that a Jewish broker or members of a Hasidic school or community may have committed or condoned insurance fraud . . . were construed by Defendant as being 'anti-Semitic.'" (emphasis added)). Even if Plaintiff had alleged that she faced discrimination because of her Catholic religion, Plaintiff's Complaint, which is based almost entirely on her beliefs would be insufficient to state a claim for relief. *See Gilford v. NYS Office of Mental Health*, No. 17-CV-8033, 2019 WL 1113306, at *5–6 (S.D.N.Y. Mar. 11, 2019) ("No matter what the pleading standard is, her complaint must at least contain enough factual allegations that are not made upon information and belief to 'raise a right to relief above the speculative level.'" (quoting *Twombly*, 550 U.S. at 555)); *Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 461 (S.D.N.Y. 2016), *aff'd*, 759 F. App'x 42 (2d Cir. 2019) ("[W]hile 'a plaintiff may plead facts alleged upon information and belief where the belief is based on factual information that makes the inference of culpability plausible, such allegations must be 'accompanied by a statement of the facts upon which the belief is founded.'" (quoting *Munoz–Nagel v. Guess, Inc.*, No. 12-cv-1312, 2013 WL 1809772, *3 (S.D.N.Y. Apr. 30, 2013))). Accordingly, Plaintiff's Title VII claim is dismissed.

II. <u>Age Discrimination Claim</u>

Plaintiff is 57 years old, Compl ¶ 18, and therefore is within the scope of protections afforded by the ADEA. *See Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 584 (2004) (noting that employees over 40 are protected by the ADEA). A plaintiff can state a claim under the ADEA by alleging "that [her] employer took an adverse action against [her] and that age was

the but-for cause of the adverse action." *Kairam v. W. Side GI, LLC*, 793 F. App'x 23, 26 (2d Cir. 2019) (citing *Vega*, 801 F.3d at 86). Just as with Plaintiff's Title VII claim, Plaintiff has adequately alleged that Defendant took an adverse action against her because she was terminated. The Court finds, however, that Plaintiff has not satisfied her minimal pleading burden and has failed to plausibly allege facts that permit an inference that Plaintiff was discriminated against based on her age.

"To survive a Rule 12(b)(6) motion to dismiss, a plaintiff asserting an employment discrimination [claim] under the ADEA must plausibly allege that adverse action was taken against her by her employer, and that her age was the 'but-for' cause of the adverse action." *Marcus v. Leviton Mfg. Co., Inc.*, 661 F. App'x 29, 31–32 (2d Cir. 2016) (citing *Vega*, 801 F.3d at 87). Similar to a Title VII claim, a plaintiff's pleading burden is minimal and they need only "plead facts that give 'plausible support to a minimal inference' of the requisite discriminatory causality." *Id.* (citing *Littlejohn,* 795 F.3d at 310–11); *see also Canada v. Perkins Coie LLP*, No. 18-CV-11635, 2020 WL 895705, at *1 (S.D.N.Y. Feb. 18, 2020).

Plaintiff principally relies on one factual allegation to support an inference that Plaintiff's age was the "but-for" cause of her termination. Plaintiff alleges that after she was terminated, "Plaintiff was replaced by much younger worker or workers (the people in 'Team Y07')." Compl. ¶ 15. One way in which a plaintiff can plead facts to support an inference of discrimination is by alleging that "an employer replace[d] a terminated or demoted employee with an individual outside the employee's protected class." *Littlejohn,* 795 F.3d at 313. Here, the Court is unable to ascertain whether the employees on "Team Y07" are in Plaintiff's protected class (*i.e.* whether these employees are over 40-years old) or not. This single allegation is insufficient for the Court to make the requisite minimal inference that Plaintiff's age was a "but-for" cause of her termination. *See*

14

*Marcus,* 661 F. App'x at 33 ("Without more, the mere fact that an older employee was replaced by a younger one does not plausibly indicate discriminatory motive.").

Plaintiff also alleges that her supervisor Jenifer Tucci "a woman in her 40's . . . favored the much younger mentees in several respects" and that Plaintiff "complained about the unfair treatment, which included being singled out for adverse treatment by the supervisor, and the supervisor's demeaning comments and a condescending attitude toward Plaintiff." Compl. ¶¶ 45–47. Plaintiff does not include a single fact to support these allegations. "A plaintiff must supply sufficient factual material, and not just legal conclusions, to push the misconduct alleged in the pleading beyond the realm of the 'conceivable' to the 'plausible.'" *Marcus,* 661 F. App'x at 32 (citing *Vega*, 801 F.3d at 84). These allegations, unsupported by a single example of how younger employees were favored, what unfair treatment Plaintiff was subjected to, how Plaintiff was adversely treated, what comments were made, or how Plaintiff's supervisor exhibited a condescending attitude, amount to legal conclusions and are not information on which the Court can rely to make an inference that Plaintiff was discriminated against based on her age. Accordingly, Plaintiff's ADEA claim is dismissed.

III.  Race Discrimination Claim

Under 42 U.S.C. § 1981[5] a Plaintiff can state a claim for race discrimination by demonstrating "(1) he is a member of a racial minority; (2) the defendant intended to discriminate against him on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute." *See Weiss v. La Suisse*, 260 F. Supp. 2d 644, 650 (S.D.N.Y. 2003) (citing *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 7 F.3d 1085, 1087 (2d Cir. 1993)). Plaintiff asserts that she can bring a race discrimination claim because "the law in the United States

---

[5] Plaintiff's race discrimination claim is brought pursuant to 42 U.S.C. § 1981, not Title VII of the Civil Rights Act of 1964. *See* Compl. ¶¶ 60–67, 72–76.

has evolved in a manner where (for reasons not very logical) people of the Jewish faith have been given the status of being a separate race." Compl. ¶ 55. Plaintiff argues that she has stated a claim for "reverse-race discrimination." Pl. Opp'n at 6.

Case law has recognized that for purposes of § 1981 "individuals of Jewish ancestry are a distinct race." *Weiss*, 260 F. Supp. 2d at 650. Plaintiff, however, has not alleged that she is an individual of Jewish ancestry. Plaintiff's race is alleged to be Caucasian. Compl. ¶ 20. Even if Plaintiff's race fell within the protections of § 1981—which requires a Plaintiff to demonstrate she is "a member of racial minority"—Plaintiff's Complaint does not include a single allegation that "the [D]efendant intended to discriminate against [her] on the basis of race." *See Weiss*, 260 F. Supp. 2d at 650. Accordingly, Plaintiff's § 1981 claim is dismissed.

IV.  Supplemental State Claims

Plaintiff's fourth claim for relief asserts that "Defendant's actions violated comparable provision of the N.Y.S. Human Rights Law, and in particular its provisions against religious and age discrimination." *Id.* ¶ 78. Plaintiff does not identify with specificity any state law allegedly violated by Defendant. "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must, among other things, provide 'a plain statement of the claim . . . [that] give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Homeless Patrol v. Joseph Volpe Family*, 425 F. App'x 60, 62 (2d Cir. 2011) (quoting *Patane v. Clark,* 508 F.3d 106, 113 (2d Cir.2007)). Plaintiff's fourth claim for relief does not provide Defendant with notice of the state law claims Plaintiff wishes to pursue. Therefore, the Court finds that Plaintiff's fourth claim for relief runs afoul of federal pleading rules which require that a Plaintiff's claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In any event, having dismissed all of Plaintiff's claims brought pursuant to

federal law, the Court separately declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3). Accordingly, Plaintiff's fourth claim for relief is dismissed.

## **CONCLUSION**

Based on the foregoing, Defendant's motion to dismiss is GRANTED and Plaintiff's claims are dismissed without prejudice.

Consistent with the findings and conclusions in this Opinion and Order, Plaintiff may file an amended complaint within 30 days from the date of this Order if she is so advised. Failure to file an amended complaint within 30 days will result in dismissal of this action without further notice to the parties. *See* Fed. R. Civ. P. 41(b).

The Clerk is respectfully requested to terminate the motion (Doc. 15).

**SO ORDERED:**

Dated: New York, New York
July 22, 2020

_____
Philip M. Halpern
United States District Judge